ORIGINAL

FILED

JAN 2 9 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

ENTERED

JAN 3 0 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>CALIFORNIA LITFUNDING, a Nevada corporation,<br><br><br>Reorganized Debtor. | Case No. LA 04-11622RN<br><br>Chapter 11<br><br>ADV No. 06-01865RN |
| LAUREN ASSOCIATES, VALERIE WESTHEIMER, DFOTM TRUST, and KEMPTEN INTERNATIONAL,<br><br>Plaintiffs,<br><br>v.<br><br>MORTON C. REED, an individual, STANLEY WEINER, an individual, and DAVID COHEN, an individual,<br><br>Defendants. | **AMENDED MEMORANDUM OF DECISION DISMISSING ADVERSARY PROCEEDING AND DENYING MOTION FOR CONTEMPT SANCTIONS**<br><br><br><br>DATE:       October 31, 2006<br>TIME:       9:00 a.m.<br>PLACE:     Courtroom 1645 |

JAN 3 0 2007

**COUNSEL** appearing at the hearing on the Defendants' Motion to Dismiss Complaint for Fraud and For Contempt Sanctions held on October 31, 2006:

For Defendants Morton C. Reed, Stanley Weiner, and David Cohen, (collectively, "Defendants") and for California Litfunding, a Nevada corporation and Litfunding Corporation, a Nevada corporation (collectively, "Debtors"): Sean A. O'Keefe, Winthrop Couchot, Professional Corporation, Newport Beach, CA.

For Plaintiffs Lauren Associates, Valerie Westheimer, DFOTM Trust, and Kempten International,

1 Lincenberg, PC, Los Angeles, CA; and John Graham and Thomas M. Geher, Jeffer Mangels Butler
2 & Marmaro LLP (appearing only for DFOTM Trust), Los Angeles, CA.

3 This Memorandum of Decision relates to the Motion to Dismiss Complaint for Fraud and

4 For Contempt Sanctions ("Motion") filed by the Defendants in this adversary proceeding and the

5 responsive pleadings filed thereto. This Court has core jurisdiction pursuant to 28 U.S.C. §§ 157

6 and 1334.

7 This Decision is based upon the Court's evaluation of the parties' respective points and

8 authorities, requests for judicial notice, and declarations filed in support of or in opposition to the

9 Motion. For the reasons set forth below, this Court grants the motion to dismiss the complaint and

10 denies the request for sanctions.

11 **I. FACTS**

12 The Movants are Morton Reed, Stanley Weiner, and David Cohen (directors of the Debtors

13 and "Defendants" in the above-referenced action), and the Debtors (collectively, the "Movants").

14 Debtors are not a party to the adversary proceeding but joined in the Motion. The Motion seeks two

15 types of relief: (1) dismissal of the adversary proceeding, and (2) contempt sanctions re contempt

16 in the form of attorneys' fees and costs.

17 In March 2006, the Plaintiffs commenced a state court action against the Defendants for

18 fraud in connection with the disclosure statement issued as a precursor to confirming the Debtor's

19 plan of reorganization. This prompted the filing of a motion (1) to enforce the discharge injunction

20 of the Debtor's confirmed plan of reorganization under §§ 1141 and 1144,[1] and (2) for contempt

21

22 _____

[1] Section 12.2 of the order confirming the plan provides: "Except as otherwise expressly provided in the Plan,
23 the documents executed pursuant to the Plan, or this order, on and after the Effective Date, all Persons and Entities who
have held, currently hold, or may hold a debt, Claim or Interest discharged pursuant to the terms of the Plan (including
24 but not limited to States and other governmental units, and any State official, employee, or other entity acting in an
individual or official capacity on behalf of any state or other governmental units) shall be permanently enjoined from:
25 (a) taking any of the following actions on account of any such discharged debt, Claim or Interest: (1) commencing or
continuing in any manner any action or other proceeding against the Debtors, the Reorganized Debtors, their successor
26 or their property; (2) enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award,
decree or order against the Debtors, the Reorganized Debtors, their successors or their property; (3) creating, perfecting,
27 or enforcing any Lien or encumbrance against the Debtors, the Reorganized Debtors, their successors or their property
(4) asserting any set off, right of subrogation or recoupment of any kind against any obligation due the Debtors, the
28 Reorganized Debtors, their successors, or their property; and (5)c commencing or continuing in any action, in any
manner, in any place that does not comply with or is inconsistent with the provision of this Plan; and (b) taking any of

- 2 -

1    sanctions.    Several issues were raised at the hearing, including, *inter alia*, the state court's

2    jurisdiction to hear matters that pertain to the Debtor's confirmed Plan.  At the hearing, the Court

3    ruled that the bankruptcy court has exclusive jurisdiction over the Plaintiffs' claims and the state

4    court action was stayed under 11 U.S.C. § 105(a).  This Court, however, withheld any ruling

5    regarding contempt.  Findings of fact, conclusions of law and an order were entered on August 8,

6    2006.

7         In view of the court's order of August 8, 2006, the Plaintiffs dismissed their action in the

8    state court and commenced this adversary proceeding asserting the same claim for relief in the

9    Debtors' consolidated bankruptcy case on August 11, 2006.  In general, Plaintiffs are alleging fraud

10   in the inducement against the Defendants for misrepresentations and/or omissions in the Debtor's

11   disclosure statement that occurred preconfirmation which, according to Plaintiffs, caused them to

12   agree to a settlement and accept the Debtors' plan of reorganization, which, inter alia, included

13   general releases of the Debtors and the Defendants. *See Complaint attached as Ex. 3 to the Motion.*

14        As an overview, Plaintiffs are prepetition investors of the Debtors and members of the group

15   of unsecured creditors referred to as "IEP Claimants" under the confirmed Plan.  The bankruptcy

16   case dealt mainly with the litigation between the Plaintiffs, the other IEP Claimants, the Debtors, and

17   their officers and directors.  On February 26, 2004, the parties entered into a global settlement that,

18   inter alia, released all claims held by the parties against each other, and their respective officers,

19   directors and agents, both known and unknown.  The settlement agreement was drafted by Thomas

20   Geher of Jeffer Mangels, attorney for Plaintiff DFOTM Trust, and was described in detail in the

21   Second Amended Joint Disclosure Statement (the "Disclosure Statement") and incorporated into the

22   confirmed Second Amended Joint Chapter 11 Plan of Reorganization (the "Plan").

23        In general, the Plan provided for the IEP Claimants to receive all funds collected from the

24   attorneys whose litigation the Debtors funded ("Contract Pool") minus an administrative charge.

25   _____

26   the following actions on account of any claim or rights of action that are revested in, or transferred to, the Reorganized
     Debtors as of the Effective Date or under the Plan (to the extent one or more Debtors' Estates held such claim or rights

27   of action or held the right to assert such claim or right of action after the Petition Date): (1) asserting such claims or rights
     of action against nondebtor third parties; and (2) commencing or continuing in any manner any action ro other proceeding

28   of any kind to recover or otherwise with respect to such claims or rights of action."

1    The funds collected were to be used to pay the IEP Plan Note of $26,111,763 plus 20% interest

2    beginning May 1, 2004. If the Note was paid in full prior to May 1, 2005, the interest rate on the

3    Note during the first year was to be reduced to be 10% per annum. The IEP Plan Note was a

4    nonrecourse note and was to be paid only from the Contract Pool. If the Note was not paid in full

5    by May 1, 2005, the IEP Claimants were entitled to collect from the Debtors the balance on the Note

6    or the administrative charge paid to the Debtors, whichever was less. The IEP Distribution Agent

7    appointed by the IEP Claimants was given a lien in the Contract Pool and its proceeds. The lien did

8    not attach to any contracts entered into by the Debtors after February 26, 2004. The Disclosure

9    Statement described the procedures for distributing funds in the Contract Pool and the rights and

10   obligations of the parties pursuant to the Settlement Agreement. It also stated that the treatment of

11   the rights of IEP Claimants provided for in the Plan was a compromise of controversies and upon

12   Plan confirmation, each IEP Claimant would be bound by the provisions and distribution procedures

13   provided for in the Plan, the settlement agreement, the IEP Plan Note, etc., and that each IEP

14   Claimant's claim was to be fixed in the amount set forth under the Plan.

15       The Disclosure Statement also explicitly provided for the general releases described in the

16   parties' Settlement Agreement. *See* Ex. F in Movants' First RSN, at 185, 230. Similarly, the Plan

17   provided for the release required by the parties' Settlement Agreement. *See* Ex. A in Movants' First

18   RSN, at 41-43 (Plan at 28-30, ¶L). In particular, the IEP Claimants released the Debtors, their

19   officers, directors, agents, attorneys, employees affiliate, etc. from any and all claims, whether

20   known or unknown, fixed or contingent, liquidated or unliquidated, except the obligations set forth

21   in the Plan and the IEP Settlement Agreement. Id. The release was meant to bar all matters released

22   therein notwithstanding the discovery or existence of any additional information or different facts

23   or claims. Id. The parties also waived their rights under § 1542 of the Cal. Civil Code which

24   provides in relevant part:

25           "A general release does not extend to claims which the creditor does
             not know or suspect exist in his favor at the time of executing the
26           release, which if known by him must have materially affected his
             settlement with the debtor."

27

28   The Plaintiffs voted in favor of the Plan, *see* Ex. J to First RSN, and the Plan was confirmed by an

- 4 -

1   order of this Court entered on June 17, 2004. <u>Ex. A to Movants' First RSN</u>.

2       The Plaintiffs' complaint alleges that in order to reorganize the Debtors, the Defendants

3   fraudulently induced the Plaintiffs to enter into the Settlement Agreement and to accept the Plan by

4   omitting to disclose material facts and making misrepresentations about others, postpetition but

5   before plan confirmation, upon which the Plaintiffs relied. *See* <u>Ex. 3 to the Motion</u>. In particular,

6   the Plaintiffs alleged fraud in the inducement when the Defendants represented in the Disclosure

7   Statement that the IEP Claimants could expect to collect approximately $35 million from the

8   contracts entered into by the Debtors in the cases then pending, but in fact, collection on one set of

9   cases (Prop 65 cases) had been ruled out due to summary adjudication. <u>Id</u>. at 7-9. Also, Defendants

10   failed to disclose an agreement between an attorney, Mark Ravis ("<u>Ravis</u>"), and the Weiner Trust

11   that effectively gave the Weiner Trust a priority security interest in the receivables due from Ravis

12   but the debt owing by Ravis to the Debtors had been paid off with funds received from the Weiner

13   Trust. <u>Id</u>. As such, any recovery would go to the Weiner Trust instead of the IEP Claimants. <u>Id</u>.

14   The Plaintiffs also alleged that the Defendants failed to include a 20% loss calculation in their

15   projections. (The Court hereafter refers to these acts as "new fraud" or "Postpetition Fraud Claims.")

16   Plaintiffs contended that they did not discover these Postpetition Fraud Claims until after

17   confirmation of the Plan and as such, said claims were not barred by the general releases given. The

18   complaint also reiterates the alleged fraud committed prepetition that would have been released

19   pursuant to the Settlement Agreement and Plan. Finally, Plaintiffs alleged that the Defendants

20   breached certain provisions of the Plan.[2] However, the complaint avers only one cause of action for

21   fraud. The fraud cause of action pertains to solely postpetition fraudulent conduct. Plaintiffs are

22   seeking at least $4 million in damages plus interest and an unknown amount for exemplary damages.

23       In support of the dismissal, Movants assert that the Postpetition Fraud Claims are (1) a

24   collateral attack on the plan confirmation order; (2) time barred under the Federal Rules of

25

26

---

27   [2] Plaintiff contended the Debtors and the Defendants "(a) gave unauthorized excessive discounts greater than 10% authorized by the Agreement and the Plan to certain lawyers; (b) did not deposit into the Concentration Account payments received from some of the funded lawyers; and (c) approved write-off agreements with lawyers in violation

28   of the Agreement and the Plan." <u>Complaint</u>, ¶ 21.

1  Bankruptcy Procedure ("FRBP"); and (3) barred by res judicata. Movants also seek a finding of

2  contempt in the form of sanctions for Plaintiffs having brought this adversary proceeding and the

3  state court action notwithstanding the general releases given and the injunctive provision of the order

4  confirming the Plan.

5  In response, the opposition argues that (1) the doctrine of res judicata does not apply and (2)

6  §1144 does not apply to the Postpetition Fraud Claims. The Plaintiffs also assert that the fraud in

7  this case vitiates the release. Lastly, the request for contempt sanctions is procedurally defective.

8  In reply, the Movants reiterate that res judicata applies to this adversary proceeding and that

9  the Postpetition Fraud Claims were time barred. The cases cited by the Plaintiffs for the proposition

10  that § 1144 does not apply are inapposite. Likewise, the allegations of fraud lack merit based upon

11  certain events that have occurred and pleadings that have been filed in this case.

12  **II. DISCUSSION**

13  In order to sustain a motion to dismiss, a court must: (1) construe the complaint in the light

14  most favorable to the plaintiff; (2) accept all well-plead factual allegations as true; and (3) determine

15  whether plaintiff can prove any set of facts to support a claim that would merit relief. <u>Cahill v.</u>

16  <u>Liberty Mutual Insurance, Co.</u>, 80 F.3d 336 (9th Cir. 1996). In construing the complaint in the light

17  most favorable to plaintiffs, the court should not dismiss a complaint unless it appears beyond doubt

18  that the plaintiffs can prove no set of facts in support of their claim which would entitle them to

19  relief. <u>NL Industries, Inc. v. Kaplan</u>, 792 F.2d 896 (9th Cir. 1986). Accepting all well-pleaded

20  factual allegations as true requires the court to accept as true all material allegations in the complaint

21  as well as all reasonable inferences drawn from them.[3] <u>Id.</u> A dismissal will be affirmed "only if it

22  is clear that no relief could be granted under any set of facts that could be proven consistent with the

23  allegations." <u>Cooke, Perkiss, & Liehe v. Northern Calif. Collection Serv.</u>, 911 F.2d 242, 244 (9th Cir.

24  1990).

25  ///

26

27  [3] If a Rule 12(b)(6) motion presents matters outside of the pleadings which are not excluded by the court, the
motion may be treated as one for summary judgment and disposed of as provided under Rule 56 provided all parties are

28  given reasonable opportunity to present all material made pertinent to such Rule 56 motion.

**A.  The instant adversary proceeding is a collateral attack against this Court's Plan confirmation order and is therefore time barred under the 11 U.S.C. § 1144.**

"Collateral attack" is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court. Pratt v. Ventas, Inc., 365 F.3d 514, 519 (6th Cir. 2004). A collateral attack against a confirmed plan is impermissible. See In re Trulis, 107 F.3d 685, 691 (9th Cir. 1995) (only a direct attack against a plan is available and collateral attack is unavailable).

The Defendants challenge the legitimacy of the instant action arguing that the adversary proceeding is a collateral attack on the Debtors' plan of reorganization confirmed pursuant to an order entered two years ago. Motion, at 11:3-11.  Plaintiffs, on the other hand, suggest that the 11 U.S.C. § 1144 does not apply in this proceeding since courts, including the Bankruptcy Appellate Panel for the 9th Circuit, have allowed postconfirmation fraud claims similar to the Plaintiffs'. Opp'n., at 17-19.

> Section 1144 (Revocation of an order of confirmation) provides:
> "On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.  An order under this section revoking an order of confirmation shall--
> > (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
> > (2) revoke the discharge of the debtor."

Movants argue that the limitations imposed by § 1144 bar the Plaintiffs from pursuing the claim that the Plan and the release of the Defendants were procured through fraud of the Defendants. The order confirming the Plan was entered on June 17, 2004 which became final on June 27, 2004 without having been appealed.  Pursuant to § 1144, challenges based on fraud against the order confirming the Plan had to have been made no later than January 17, 2005.

The law in applying § 1144 is well-established. The Ninth Circuit has held that § 1144 is the only avenue for revoking confirmation of a plan of reorganization. In re Orange Tree Associates, Ltd., 961 F.2d 1445, 1447 (9th Cir. 1992).  The expiration of the limitation period bars a motion to set aside confirmation of a plan of reorganization even if the fraud is not discovered until the period has passed.  Id.; accord In re Mission Heights Inventors Ltd. Ptnr., 202 B.R. 131 (D.Ariz. 1996)

1  (usually-accepted discovery of the fraud exceptions to a statute of limitations period are not available

2  to plan confirmation challenges).  In dismissing a complaint to overturn the order confirming a

3  chapter 11 plan, the Ninth Circuit explained that there is a compelling reason for the finality of

4  reorganization plans and courts have held uniformly that strict compliance with § 1144 is a

5  prerequisite to relief.  Id. citing to In the Matter of Newport Harbor Associates, 589 F.2d 20 (1st Cir.

6  1978).  The court has no power to extend the time within which the motion to revoke a confirmation

7  plan may be made.  Id. at 1448.  In part, this is because under § 1141(a),

8      "the provisions of a confirmed plan bind the debtor, any entity issuing securities
       under the plan, any entity acquiring property under the plan, and any creditor, . . .
9      whether or not the claim or interest of such creditor, . . . is impaired under the plan
       and whether or not such creditor. . . has accepted the plan."
10

11     Plaintiffs argue, however, that § 1144 does not apply in this case because the Plaintiffs are

12  not requesting that the Plan be revoked as their claims are for damages against the Defendants and

13  not the Debtors.  They rely on four cases Newport Harbor Associates, 589 F.2d 20 (1st Cir. 1978);

14  In re Coffee Cupboard, Inc., 119 B.R. 14, 19 (E.D.N.Y. 1990); In F& M Marequet Nat'l. Bank v.

15  Emmer Brothers Co. (In re Emmer Brothers Co.), 52 B.R. 385 (D. Minn. 1985); and In re Circle K

16  Corp., 181 B.R. 457 (Bankr. Ariz. 1995) to support their position.  This Court finds that Plaintiffs

17  misconstrued the holdings in these cases and as such, erroneously relied on them to support their

18  position.

19     The oft-cited case on the application of § 1144 is Newport Harbor Associates, 589 F.2d 20

20  (1st Cir. 1978) where the First Circuit denied a debtor's motion to revoke confirmation alleging

21  fraudulent misrepresentations by the debtor's management regarding the extent of the debtor's

22  operating losses.  In finding that the claim was barred under § 1144, the First Circuit also stated that:

23     "[its] opinion should not be read to suggest that the debtors or other creditors who
       may have been injured by fraud are necessary without other remedies in other forums.
24     . . . It would appear . . . res judicata and collateral estoppel would not bar such an
       action, at least where the alleged fraud could not have been asserted in the
25     bankruptcy proceeding, the underlying factual claims were not actually adjudicated,
       and the relief sought would not upset the confirmed plan of arrangement." Newport
26     Harbor, 589 F.2d at 24.

27  Subsequent cases that have analyzed this exception, have recognized that creditors may not attack

28  confirmation orders by simply characterizing their attempt as an independent cause of action, rather

- 8 -

1  than a motion to revoke the order. In re Coffee Cupboard, Inc., 119 B.R. 14, 19 (E.D.N.Y. 1990);

2  see also In F& M Marquet Nat'l. Bank v. Emmer Brothers Co. (In re Emmer Brothers Co.), 52 B.R.

3  385 (D. Minn. 1985) (the courts have held that creditors may not attack confirmation orders by

4  simply characterizing the attempt as an independent cause of action rather than a motion to revoke

5  the order); cf. In re Generis Health Ventures, Inc., 340 B.R. 729 (D. Del. 2006). Thus, the 180 day

6  deadline in § 1144 acts as a bar only to truly independent causes of action based on the debtor's

7  wrongful conduct. In re Coffee Cupboard, Inc., 119 B.R. at 19. The overriding principle was that:

8  "where a claim does not involve an attempt to 'redivide the pie' by a disgruntled
   participant... but rather involves a dispute about additional assets that did not figure
9  in the reorganization plan, an adjudication of the dispute would not upset the
   confirmed plan and the 180-day time limitation of § 1144 is not a bar." In re Emmer
10 Brothers Co., 52 B.R. at 392.

11 These cases establish that a court must look carefully at the facts, the cause of action, and the

12 requested relief to determine if the plaintiff is seeking to revoke confirmation or "redivide the pie".

13         To determine whether an action is truly an independent cause of action under the Newport

14 Harbor test, the Court must find: (i) the alleged fraud could not have been asserted in the bankruptcy

15 proceeding; (ii) the underlying factual claims were not actually adjudicated; (iii) the relief sought

16 would not upset the confirmed plan of arrangement and negatively affect innocent parties and

17 creditors; and (iv) the action was not seeking to revoke confirmation or "redivide the pie." Taking

18 the facts alleged in the complaint as true, this court finds that the cause of action for fraud is not a

19 truly independent cause of action. Instead, it is a collateral attack on the Plan that is barred by § 1144

20 as the factual issues presented were similar to the factual issues raised in the plan confirmation

21 process.

22         ***(i) the alleged fraud could have been asserted in the bankruptcy proceeding***

23         As for the first factor, Plaintiffs argue that the alleged fraud, which constitutes "new

24 fraud", could not have been raised preconfirmation as it was not discovered until after confirmation.

25 Opp'n., at 19:16-23. However, the facts that allegedly gave rise to the fraud were the same

26 statements that were either provided in or omitted from the Debtors' Disclosure Statement. The

27 projections that the Plaintiffs allege contained misrepresentations were originally filed in January

28 2004 and amended twice, with the second amended Disclosure Statement being filed in April 2004

1  and later approved by the Court. In the exhibits that were attached to the Disclosure Statement and

2  the settlement letter between the parties, the list of all pending cases constituting the "Contract Pool"

3  from which cash flow distributions are to be made, the history/analysis of collections from the

4  Contract Pool, and the projections of gross collection from the Contract Pool include the cases from

5  Ravis who, according to Plaintiffs, entered into a "secret loan" with the Weiner Trust. *See* Movants'

6  First RSN, Ex. F and Plaintiffs' RSN, Ex. 3. Plaintiffs assert that they relied on this information in

7  settling with the Movants and approving the Plan. Complaint, ¶26 (*attached as Ex. 3 to Motion*).

8  The alleged fraudulent representations were available for investigation months before the hearing

9  on confirmation and indeed, months after plan confirmation. Creditors were expected to review and

10  investigate the Debtors' projections set forth in the Disclosure Statement. Indeed, most disclosure

11  statements admonish creditors to seek legal counsel to explain certain provisions of the Disclosure

12  Statement in order for them to make informed decisions about a plan. Plaintiffs were not wanting

13  of legal advice during the Disclosure Statement and Plan hearings in this case. The information

14  giving rise to the purported fraud was available to the Plaintiffs and they could have (and should

15  have) conducted their due diligence and investigated the accuracy (or inaccuracy) of the statements

16  made in or omitted from the Disclosure Statement. The fraud could have been asserted in the

17  bankruptcy case preconfirmation in opposition to the Disclosure Statement and the Plaintiffs also

18  had six months postconfirmation to raise their fraud claim.

19              ***(ii) the underlying factual claims were actually (or could have been) adjudicated***

20              As for the second factor, the facts demonstrating prepetition claims of fraud stated

21  in the complaint were clearly asserted and adjudicated in Debtors' chapter 11 case through the

22  Settlement Agreement and Plan. Likewise, the facts that purport to give rise to the alleged fraud

23  postpetition but preconfirmation, i.e., the "new fraud" claims could have been addressed in the

24  course of approving the Disclosure Statement and the Plan. As early as the Disclosure Statement

25  hearings, Plaintiffs were aware that the Debtors' projections relating to the collection from pending

26  lawsuits were, by definition, speculative. There were no assurances that all collection efforts would

27  be successful such that the amounts collected would reach the projected levels stated in the

28  Disclosure Statement. *See* Ex. F of First RSN, at 162-63.

1    In the complaint, the Plaintiffs allege that the Defendants represented in the

2    Disclosure Statement that the IEP Claimants could collect approximately $35 million from the

3    various pending cases. Plaintiffs further allege that these projections were false given the

4    impossibility of realizing proceeds from one set of Prop 65 cases and the projected recovery from

5    Ravis that allegedly was payable to the Weiner Trust. Ex. 3 to the Motion at 35-37. However, the

6    Plaintiffs originally challenged the Debtors' projections based on their own expert's opinion that the

7    Debtors could only collect $9 million from the open investments based upon their current loss rate

8    instead of the projected $35 million. Reply, at 16-17; See Ex. E in Movants' Second RSN.

9    Plaintiff's financial expert's declaration actually stated that his findings were based upon the records

10    which he obtained from the Debtors. Id. at 16; Ex. E in Movants' Second RSN. The declaration was

11    executed on February 2, 2004 and the parties' settlement, incorporating the releases, was effective

12    February 26, 2004. Although the transaction between Ravis and the Weiner Trust surfaced

13    postconfirmation, as Movants argue, the Plaintiffs were convinced, based on their own expert's

14    opinion, that the Defendants were "lining their pockets with corporate funds derived from their

15    investments and engaging in 'bad acts and financial mismanagement'" and never believed the

16    Debtors' projections and representations in the Disclosure Statement. Id. at 17 citing Opposition of

17    Petitioning Creditors to Motion for Joint Administration of Cases filed by Thomas Geher, counsel

18    for DFOTM (and other IEP Claimants) attached as Ex I to Movants' Second RSN. While it may be

19    true that Plaintiffs' may not have voted to accept the Plan or executed the Settlement Agreement if

20    they were aware of the acts of fraud discovered postconfirmation, the events leading up to Plan

21    confirmation suggest that the parties disputed the amount of the proceeds to be collected from the

22    litigation investments comprising the Contract Pool under the Plan. These are the same operative

23    facts that gave rise to the allegations of fraud that they could have investigated and discovered

24    preconfirmation.

25    Notwithstanding the truthfulness of the allegations that certain litigation proceeds

26    were uncollectible, the issue regarding the Debtors' projections was litigated at the Disclosure

27    Statement hearing and later resolved through Plaintiffs' settlement and acceptance of the Plan, but

28    Plaintiffs chose to raise the acts of new fraud almost two years after confirmation of the Plan.

- 11 -

*(iii) the relief sought would upset the confirmed plan of reorganization and negatively affect innocent parties and creditors*

With respect to the third factor, if Plaintiffs were to go forward with this litigation and prevail, they would upset the Plan's arrangement to release Defendants, Plaintiffs and others from any and all claims, known and unknown, liquidated and unliquidated, and that this was one of the essential conditions for the Plaintiffs to receive lien rights and control over the Contract Pool. Clearly, the Movants would not have released the Plaintiffs and other IEP Claimants if they were not to receive the same release from the Plaintiffs and other IEP Claimants. The Plan and the carve out distribution to unsecured creditors were based on the Settlement Agreement. While the adversary proceeding purports not to revoke the confirmation order, it impacts those other IEP Claimants who released their rights under the Plan and the Defendants who relinquished their control over the Debtors' assets in order to provide a distribution to all creditors of the Debtors under the Plan. Unlike <u>Emmer Brothers,</u> where the newly discovered assets were not administered under the Plan and did not affect the distribution to creditors, the projections/litigations mentioned in the Postpetition Fraud Claims were considered prior to confirmation. Furthermore, if the releases were avoided and deemed ineffective as to all parties thereto, then all other IEP Claimants could sue the Defendants seeking the same relief as the Plaintiffs. Conversely, by virtue of the mutual releases given by each party, a finding of fraud to procure the releases under the Plan would vitiate the releases given by the Defendants and the Debtors to the Plaintiffs and other IEP Claimants. The impact of significant monetary damages against the Defendants would upset the confirmed Plan. The Plan is an integrated document so that if a material portion were unwound, it would essentially require unwinding the other attendant aspects of the Plan thereby negatively affecting other parties and creditors who received value in the form of releases, carve outs, control and distributions provided for under the Settlement Agreement and the Plan. Contrary to the Plaintiffs' assertion, the Defendants (and the Debtors) also released their claims for bad faith filing against the Plaintiffs in exchange for the settlement.

*(iv) the action is seeking to revoke confirmation or "redivide the pie"*

Lastly, while the impact to the Plan may not be directly clear, it appears that the

- 12 -

1  litigation is an attempt to redivide the pie. The Contract Pool had an estimated value of $30 million

2  (albeit disputed). Plaintiffs are challenging the receivables from Mr. Ravis that total $250,000 by

3  asking damages of at least $4 million. *See* Reply, at 4-5, n. 2 *vis* Complaint, ¶28 attached as Ex. 3

4  to Motion. The Ravis cases account for 2% of the potential collection. Reply, at 4-5, n. 2. At the

5  same time, distributions under the Plan have been made where the IEP Claimants have collected

6  millions of dollars by virtue of the parties' settlement. Reply, at 5:1-16. If the purported fraud

7  vitiates the releases, it appears that in turn, the purported fraud vitiates the settlement and the

8  attendant payments made pursuant thereto. Although Plaintiffs argue that the adversary proceeding

9  will not redivide the pie because they seek damages against the Defendants and not more from the

10  Debtors, it would certainly upset the confirmed Plan which was based on the integrated Settlement

11  Agreement.

12         Plaintiffs rely on the BAP dicta in In re Circle K wherein the panel found that if the

13  plaintiffs prevail in their fraud claim, the court can fashion a remedy that does not upset the

14  confirmed Plan, i.e., monetary damages. 181 B.R. at 462. In reaching its decision, the BAP applied

15  the factors of Newport Harbor. While in Circle K, the BAP found that the claim was "truly

16  independent", the same cannot be said for the instant adversary proceeding applying the facts of this

17  case. Here, the releases apply to the claims being asserted in the complaint (fraud in procuring the

18  acceptance of the Plan and settlement) to which the limitations of § 1144 apply. The action is not

19  independent of the Plan.

20         Consequently, the litigation is a collateral attack upon the order of confirmation and

21  effectively attempts to revoke the confirmed Plan. Absent a timely appeal, the Plan could only be

22  revoked based on narrow terms by alleging fraud in procuring confirmation of a plan brought within

23  180 days postconfirmation, which is not the case in this adversary proceeding that was commenced

24  almost two years after confirmation. Section 1144 governs this matter and bars Plaintiffs' action

25  against the Defendants.[4]

26

27  _____

28         [4] *See* Trulis, et al. v. Barton, et al., 107 F.3d 685 (9th Cir. 1995), *infra* at p. 15.

**B. This adversary proceeding is also barred by principles of claim preclusion pursuant to the order confirming the Plan.**

In the Ninth Circuit, *res judicata* or claim preclusion provides that a "final judgment on the merits of an action precludes the parties from relitigating all issues connected with the action that were or could have been raised in that action." Rein v. Providian Financial Corp., 270 F.3d 895, 898-99 (9th Cir. 2001) citing In re Baker, 74 F.3d 906 (9th Cir. 1996); *see also* Allen v. McCurry, 449 US 90, 101 S.Ct. 411 (1980); In re Kelley, 199 B.R. 698, 702 (9th Cir. BAP 1996). *Res judicata* is appropriate when:

    (1)  the parties are identical or in privity;
    (2)  the judgment in the prior action was rendered by a court of competent jurisdiction;
    (3)  there was final judgment on the merits; and
    (4)  the same claim or cause of action was involved in both suits.

Rein, 270 F.3d at 899 (citations omitted); In re Birting Fisheries, Inc., 300 B.R. 489, 503 (9th Cir. BAP 2003).

The first three elements are easily satisfied. The order confirming the plan is a final judgment on the merits that was rendered by the bankruptcy court which has exclusive jurisdiction to rule on the approval fo the Disclosure Statement and confirmation of the Plan. The complaint also involves the same parties who participated in the Plan. Furthermore, the Defendants, as officers and directors of the Debtors, are in privity with the Debtors. *See* Cahill v. Arthur Andersen & Co., 659 F. Supp. 1115, 1122 (S.D.N.Y. 1986).

With respect to the fourth factor, Plaintiffs contend that the Postpetition Fraud Claims constitute "new fraud" which were not discovered until after plan confirmation, and that the claims are based upon postpetition, preconfirmation misrepresentations or omissions that arguably could not have been adjudicated by the court. Opp'n., at 16:1-18. The Ninth Circuit considers four elements in determining whether the same claim or cause of action was involved in both suits: (a) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (b) whether substantially the same evidence is presented in the two actions; (c) whether the two suits involve infringement of the same right; and (d) whether the two suits arise out of the same transaction or nucleus of facts. Rein, 270 F.3d at 903 citing CD Anderson & Co., Inc. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987). The same factors were applied in In re

- 14 -

1    Birting Fisheries, Inc., 300 B.R. 489, 503 (9th Cir. BAP 2003), a case cited by the Plaintiffs.

2         Unlike Birting Fisheries where the release did not release the personal liability of the

3    defendant shareholder, the rights established by the Plan (namely, the mutual releases) will be

4    impaired by the prosecution of the Plaintiffs' action.   The parties understood that the release

5    provision of the Plan released any and all claims against the Debtors, their agents, *officers and*

6    *directors*, to the extent provided for in the Plan and served as a bar from asserting any rights or

7    claims against these entities and individuals notwithstanding the discovery or existence of any

8    additional information or different facts or claims.  Motion, at 7.  In addition, the same factual

9    evidence regarding the Debtors' projections, the amount of the Contract Pool, the reliability of such

10    projections promulgated by the proponents of the Plan, Plaintiffs' reliance on and representations

11    made at the Disclosure Statement hearing and at the time of plan confirmation needed to be

12    presented to the Court prior to its approval of the Disclosure Statement, and its confirmation of the

13    Plan. The evidence could have been presented had Plaintiffs conducted an appropriate and thorough

14    investigation. They cannot benefit from their own delay in conducting whatever due diligence they

15    decided to conduct or not to conduct prior to confirmation of the Plan.

16         As in Kelley, a case cited by the Plaintiffs, "a confirmed Plan comprises all matters pertaining

17    to the debtor-creditor relationship that the debtor or any creditor might raise to advance their interests

18    in the proceedings." In re Kelley, 199 B.R. at 702.  If an action arises out of the same nucleus of

19    operative facts, new theories based on the same facts constitute the same claim or cause of action

20    for res judicata purposes.  Id.  In support of their complaint, the Plaintiffs argued that the

21    misrepresentations/omissions made in the projections directly related to the identity and value of the

22    Contract Pool used in the Plan which induced them to approve the Plan. See Opp'n., at 22:5-13.  At

23    the same time, Plaintiffs challenged the same projections before the Plan was confirmed.  The entry

24    of the settlement agreement and the order approving the Plan resolved these challenges.

25         The principles of claim preclusion have been applied consistently by the Ninth Circuit.

26    Recently, in Trulis, et al. v. Barton, et al., 107 F.3d 685 (9th Cir. 1995), the Ninth Circuit was called

27    upon to end a lawsuit that a bankruptcy court, in a collateral proceeding, held was released and

28    barred.  Trulis involved several creditors who challenged a provision in a confirmed plan that

- 15 -

1  released consenting creditors' claims against the debtor and its principals.   The creditors,

2  postconfirmation, argued that the release provisions were not enforceable under state law for

3  unconscionability, lack of consideration, duress and breach of fiduciary duties. The appellate court

4  rejected this argument and held that since the plaintiffs never appealed the bankruptcy court's

5  confirmation order, the order was a final judgment and plaintiffs cannot challenge the bankruptcy

6  court's jurisdiction over the subject matter. Trulis, 107 F.3d at 691.  Furthermore, the Circuit

7  explained that once a bankruptcy plan is confirmed, it is *binding on all parties* and all questions that

8  could have been raised pertaining to the plan at the time of its confirmation were entitled to res

9  judicata effect. Id. (Emphasis added).  Res judicata bars a party from bringing a claim if a court of

10  competent jurisdiction has rendered final judgment on the merits in a previous action involving the

11  same parties and claims. Id. The Plaintiffs in the present action are raising that the purported fraud,

12  induced them to "settle" and "accept the plan" which, in essence, advances the theory that the plan

13  confirmation was procured by fraud. This is exactly the type of action barred by res judicata and §

14  1144 of the Code.

15       Applying the same principles, the 9th Circuit BAP in In re Birting Fisheries, Inc., reached a

16  different conclusion , i.e., that res judicata did not apply. However, in that case, the release provision

17  of the Plan did not address the personal liability of the shareholder-defendant, nor his liability under

18  Norwegian corporate law.  Conversely, the release of the Defendants was clearly integrated and

19  provided for in the Plan. The settlement agreement required the settlement and the attendant release

20  be incorporated in the Plan. Furthermore, Defendants correctly stated that the release with respect

21  to the Defendants could have been entered into in a separate contract but the Plaintiffs required that

22  it be included in the Plan.

23       Additionally, the Plaintiffs cited the United State Supreme Court case of Holywell Corp. v.

24  Smith, 503 U.S. 47, 112 S. Ct. 1021 (1992) in support of their opposition.  In that case, the U.S.

25  Supreme Court held that even if § 1141(a) binds creditors with respect to claims that arose before

26  confirmation, it does not bind them with regard to *postconfirmation* claims. Holywell, however,

27  can be distinguished from the instant case because the Court in Holywell dealt with the claim of the

28  United States for taxes due postconfirmation against the disbursing agent for the reorganized debtor

1    pursuant to the Internal Revenue Code. **The claim clearly arose postconfirmation.** Here, the

2    Plaintiffs are asserting fraud based on representations made at the Disclosure Statement stage of the

3    bankruptcy case that affected the Debtors' projections, the Settlement Agreement, and subsequent

4    plan confirmation– all of which are **preconfirmation** claims.

5        Section 1141 (Effect of confirmation) provides in relevant part:
         "(a)   Except as provided in subsections (d)(2) and (d)(3) of this section, *the*
6        *provisions of a confirmed plan bind the debtor*, any entity issuing securities under the
         plan, *any entity acquiring property under the plan, and any creditor*, equity security
7        holder, or general partner in the debtor, whether or not the claim or interest of such
         creditor, equity security holder, or general partner is impaired under the plan and
8        *whether or not such creditor*, equity security holder, or general partner *has accepted
         the plan.*" Emphasis added.

9

10   Courts have held that once a bankruptcy plan is confirmed, it is binding on all parties and all

11   questions that could have been raised that pertain to the plan are entitled to res judicata effect. Trulis

12   v. Barton, 107 F.3d 685. Confirmation has the effect of a judgment by the district court and res

13   judicata principles bar relitigation of any issues raised or that could have been raised in the

14   confirmation proceeding. In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 463 (6th Cir.

15   1991).

16       While there is a strong bankruptcy policy against allowing a chapter 11 plan procured by

17   fraud to be effective, there is an equally strong policy in favor of the finality of a confirmation order.

18   8 COLLIER ON BANKRUPTCY ¶ 1144.04[2] (Alan N. Resnick and Henry J. Sommer eds., 15th ed.

19   2006) (1979). Implementing the limitations of § 1144, the Court recognizes that fraud, by its very

20   nature, may be difficult to discover and may not be discovered until the 180-day period has passed.

21   The limitation does not aim to condone fraudulent conduct but rather, faced with the difficult task

22   of balancing the two policies of protecting the interest of creditors while at the same time, the

23   rehabilitation of a debtor through its plan of reorganization and providing it with a fresh start,

24   Congress resolved the dilemma when it chose a 180-day deadline for commencing actions for fraud

25   in obtaining plan confirmation under § 1144. Id. While the cut-off date may occasionally lead to

26   an inequitable result, it is justified by the need for finality.

27       Notwithstanding the foregoing, the Court does not find that its decision to dismiss this action

28   produces an inequitable result. While fraud may be difficult to discover and as in this case, may not

1   have been discovered until the 180-day period has passed, the alleged fraud was certainly

2   discoverable before the 180-day period has passed. The facts from which the Plaintiffs could have

3   investigated "new fraud" allegedly committed by the Defendants were available to the Plaintiffs

4   preconfirmation and during the time limits of § 1144. The facts were litigated during the course of

5   confirming the Debtors' Plan and considered when the parties decided to settle and release one

6   another from any liability. Commencing an action two years after Plan confirmation will place the

7   events that occurred in the meantime in "limbo". Plaintiffs have received the benefits of their

8   bargained-for settlement and release, the time limitation for commencing an action against them has

9   expired, and they continue to manage the Contract Pool. An unappealed order confirming a plan

10  is res judicata with regard to all matters dealt with by the plan including, for purposes of this case,

11  the projections relating to the Contract Pool reserved to fund the Plan. *See* 8 COLLIER ¶ 1144.04[2].

12          Consistent with § 1144 and the principles of claim preclusion, the Plaintiffs are also bound

13  by the terms of the Plan under § 1141 (which they admit by not suing the Debtors or seeking to

14  appeal the confirmation order). The principles of res judicata apply in this case and, therefore, the

15  principle of claims preclusion bars the Plaintiffs' claims for fraud.

16
        **C.   Plaintiffs cannot seek to attack the Plan for mistake, inadvertence, excusable**
17  **neglect, fraud, newly discovered evidence pursuant to FRCP 60.**

18          A Rule 60(b) motion based upon mistake, inadvertence, excusable neglect, newly discovered

19  evidence, fraud, misrepresentation or other misconduct, made applicable in bankruptcy adversary

20  proceedings through FRBP 9024, must be made within one year after the judgment, order or

21  proceeding was entered or taken. This adversary proceeding is clearly outside of Rule 60's

22  limitation. More importantly, FRBP 9024 provides in pertinent part, "Rule 60 applies in cases under

23  the Code except that . . . (3) a complaint to revoke an order confirming a plan may be filed only

24  within the time allowed by § 1144. . . ." The time to appeal the order confirming the Plan or order

25  approving the Disclosure Statement expired long ago.

26  / / /

27  / / /

28  / / /

**D. The facts of the case do not warrant the issuance of a contempt sanction against Plaintiffs.**

Plaintiffs allege that the Movants' request for sanctions based on contempt is procedurally defective. Pursuant to Local Bankr. Rule 9020-1:

> "Unless otherwise ordered by the court, contempt proceedings are initiated by filing a motion that conforms with Local Bankruptcy Rule 9013-1(a) and a proposed order to show cause re contempt. The motion shall be served on the responding party which shall have 5 court days to object to the issuance of the order to show cause. The proposed order shall clearly apprise the party to whom it is to be directed that such party shall show cause, if any there is, why that party should not be held in contempt for the allegedly contemptuous conduct. The allegedly contemptuous conduct shall also be clearly identified in the proposed order (not just by reference to the content of the motion). The proposed order must have blank spaces in which the court may fill in the date, time and location of the hearing and the dates by which a responsive pleading and reply thereto are due.

> If the court receives no responsive pleadings to the motion for the order to show cause within the time allowed, it may conclude that there are no objections to the issuance of the order to show cause. No hearing on the motion for issuance of the order to show cause will be held unless the court so orders. If the motion for order to show cause is granted without a hearing, the court will issue and forward to the moving party the order to show cause setting the date and time of the contempt hearing. Unless the court orders otherwise in the order to show cause, the moving party shall serve the issued order to show cause on the respondent not later than 21 days before the date set for the hearing. Entities not previously subject to the personal jurisdiction of the court shall be personally served. All other persons may be personally served or may be served by mail in accordance with F.R.B.P. 7004. Any uncontroverted facts established by declaration may be treated as true. The court may limit testimony to controverted facts only."

Here, Movants contend that the "Plaintiffs filed the two complaints [knowing] that their claims were barred. Yet they pursued them anyway." Motion, at 15:21-28. "This kind of flagrant, knowing and repeated violation of the terms of the Confirmation Order justifies an award of sanctions if only to compensate the Named Defendants for the costs they incurred in opposing this conduct." Id. The Movants, however, failed to submit the corresponding proposed order to show cause required by Local Bankruptcy Rule 9020-1. While the motion alleges the conduct as contemptible, only the firm Bird Marella Boxer Wolper Nessim Drooks & Lincenberg, PC was served with the motion. Neither Jeffer Mangels nor the Plaintiffs, individually, were served with it.

A bankruptcy court's decision to deny or grant a motion for contempt sanctions is reviewed by an abuse of discretion standard. Ramirez v. Fuselier (In re Ramirez), 183 B.R. 583, 586 (9th Cir. BAP 1995); Johnston Envt'l Corp. v. Knight (In re Goodman), 991 F.2d 613, 620 (9th Cir. 1993)

1  (bankruptcy court should exercise its discretion in deciding whether to deny civil contempt

2  sanctions). A bankruptcy court's inherent powers to sanction are recognized through the application

3  of 11 U.S.C. § 105. Section 105(a) authorizes only such remedies as are "necessary or appropriate

4  to carry out the provisions of this title."

5  Civil contempt under § 105 is the normal sanction for violation of the discharge injunction.

6  4 COLLIER ¶524.02[2][c]. "Civil contempt allows an aggrieved debtor to obtain compensatory

7  damages, attorneys fees, and the offending creditor's compliance with the discharge injunction.

8  Therefore, contempt is the appropriate remedy and no further remedy is necessary." Walls v. Wells

9  Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002) (citations omitted).

10  In the instant action, Movants did not thoroughly discuss the basis for finding contempt

11  although the Motion suggests that contempt is sought for Plaintiffs' violation of the discharge

12  injunction pursuant to the confirmed Plan. For violation of the discharge injunction: "[T]he Movants

13  must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the

14  actions which violated the injunction." ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996,

15  1007-1010 (9th Cir. 2006) (citations omitted).

16  Applying this standard, however, the discharge injunction under § 524 applies only against

17  the Debtors. The Plaintiffs' cause of action does not disturb the Debtors' discharge under the

18  confirmed Plan and does not violate the injunction of § 524 because the complaint was filed against

19  the Defendants. Consequently, the intended action would not have violated the injunction in

20  connection with the Debtors.

21  The Defendants have not demonstrated such contemptuous conduct that would compel the

22  issuance of an Order to Show Cause re contempt. The complaint is directed against the Debtors'

23  directors and officers for monetary damages and not against the Debtors. The law clearly states that

24  the discharge injunction is effective only against the Debtors and the Debtors' property and does not

25  affect the liability of any co-debtor or third party. As such, the Court should not use its § 105(a)

26  powers to grant a relief that is not available to the Defendants.

27  / / /

28  / / /

-20-

### III. CONCLUSION

For the reasons and authorities stated herein, this Court grants the Motion to Dismiss the Complaint for Fraud and denies the Motion for Contempt Sanctions. This Memorandum of Decision shall constitute the Court's Findings of Fact and Conclusions of Law. A separate order consistent with this Memorandum shall be entered.

DATED: January 29, 2007

RICHARD M. NEITER
United States Bankruptcy Judge

1

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

2

**TO ALL PARTIES IN INTEREST LISTED BELOW:**

3    1.        You are hereby notified that a judgment or order entitled:

4    **<u>AMENDED</u> MEMORANDUM OF DECISION DISMISSING ADVERSARY**
**PROCEEDING AND DENYING MOTION FOR CONTEMPT SANCTIONS**

5    was entered on **JAN 3 0 2007**

6    2.        I hereby certify that a copy of the order attached hereto was mailed to the following parties
on ___**JAN 3 0 2007**.

7

8    <u>Counsel for Plaintiffs:</u>
Dorothy Wolpert

9    Bird, Marella Boxer Wolpert Nessim Drooks & Lincenberg, PC
1875 Century Park East, 23rd Floor

10   Los Angeles, CA 90067

11   John A. Graham
Jeffer Mangels Butler & Marmaro LLP

12   1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

13

14   <u>Counsel for Debtors and Defendants:</u>
Sean O'Keefe

15   Winthrop Couchot
Professional Corporation
660 Newport Center Drive, 4th Floor

16   Newport Beach, CA 92660

17   <u>United States Trustee</u>
United States Trustee

18   725 So. Figueroa, 26th Fl.
Los Angeles, CA 90017

19

20

21

22

23                                                     JON D. CERETTO, Clerk

24                                                     U.S. Bankruptcy Court

25                                                     By:

26                                                     _____

27                                                     Deputy Clerk

28

- 22 -